UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Amy H.,       Civ. No. 20-2596 (BRT)

    Plaintiff,

v.      **MEMORANDUM OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

    Defendant.

---

Edward C. Olson, Esq., Disability Partners Attorneys of Minnesota; Karl E. Osterhout, Esq., Osterhout Disability Law, LLC, counsel for Plaintiff.

Elvi Jenkins, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amy H. seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 24, 27.) For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

## BACKGROUND

### I.   Procedural History

On November 21, 2013, Plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of January 21, 2013, and a date of last insured on September 30, 2018. (Tr. 286, 550–56.)[1] The Social Security Administration ("SSA") denied Plaintiff's application and again on reconsideration. (Tr. 368–70, 377–79.) On July 20, 2016, following a hearing, an Administrative Law Judge ("ALJ") issued a partially favorable decision. (Tr. 282–311.) Plaintiff requested review before the SSA's Appeals Council. (Tr. 320–26.) On March 29, 2018, the SSA's Appeals Council granted Plaintiff's request for review and vacated the ALJ's decision, remanding the case to an ALJ. (Tr. 322–25.) After a second hearing on August 6, 2018, the ALJ issued an unfavorable decision on December 19, 2018. (Tr. 327–51.) Plaintiff again requested review before the Appeals Council and the Appeals Council again granted Plaintiff's request and remanded the decision to an ALJ on August 28, 2019. (Tr. 361–66.) A third hearing was held on January 14, 2020, and the ALJ issued another unfavorable decision on February 3, 2020. (Tr. 8–44, 192–243.) On October 28, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981; (Tr. 1–4).

---

[1]   Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 20.)

## II.   Relevant Evidence

The Court adopts and incorporates the facts contained in the Administrative Record, (Doc. No. 20), and will include the relevant facts as necessary in the discussion below.

## DISCUSSION

## I.   Standard of Review

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The claimant bears the burden of proving disability. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant demonstrates that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

## II.   Analysis

Plaintiff claims that the ALJ erred by failing to fully account for Plaintiff's migraines in the residual functional capacity ("RFC") finding. (*See generally* Doc. No. 25, Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.").) In response, the Commissioner argues that the ALJ properly considered Plaintiff's migraines when he assessed the RFC finding. (*See generally* Doc. No. 28, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.").)

### A. The ALJ's decision

The SSA has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4) (explaining the five-step sequential evaluation process). Steps one through three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); 20 C.F.R. §§ 416.920(a)-(d), 404.1522. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Pate-Fires*, 564 F.3d at 942; *see also* 20 C.F.R. § 416.920(e). Before step four, the ALJ assesses the claimant's RFC, "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); *see also* 20 C.F.R. §§ 416.920(e), 404.1545; 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations"). At step four, the ALJ must determine whether the claimant can return to his past relevant work. 20 C.F.R. § 416.920(f). If the ALJ finds at step four that a claimant cannot return to past relevant work, the burden shifts to the SSA at step five to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* §§ 416.920(g), 912, 960(c).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 30, 2018, the alleged disability onset date. (Tr. 14.) At step two, the ALJ found that Plaintiff's "headache disorder" was a severe impairment. (Tr. 14–15.) At step three, ALJ determined that Plaintiff's headache disorder, while severe, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part

5

404, Subpart P, Appendix 1. (Tr. 17–18.)[2] Before continuing to step four, the ALJ formulated Plaintiff's RFC and found that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> can occasionally climb ramps and stairs; no climbing ladders, ropes, or scaffolds; ability to balance for two of eight hours in the sense of maintaining equilibrium while standing or walking but no balancing maintaining equilibrium on narrow, slippery, or erratically moving surfaces and no gymnastic feats; occasionally stoop, no kneeling, crouching or crawling; no work at unprotected heights; no work near moving mechanical parts the kind of moving machinery such that loss of balance in proximity to that machinery would pose a severe safety hazard to life or limb; no operation of a motor vehicle; limited to performing simple routine and repetitive tasks using judgment limited to simple work-related decisions; occasional and superficial interaction with supervisors, coworkers, and the general public such that the work is rated no lower than '8' on the People Scale of Appendix B to the Dictionary of Occupational Title (DOT), Revised Edition 1991.

(Tr. 21.) After formulating Plaintiff's RFC, the ALJ found at step four that Plaintiff was unable to perform any past relevant work. (Tr. 42–43.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 43–44.) As a result, the ALJ found that Plaintiff had not been under a disability. (Tr. 44.)

---

[2] Plaintiff does not challenge the ALJ's finding that Plaintiff's migraines did not meet a listed impairment at step three.

**B. Whether substantial evidence supports the RFC**

**1. The ALJ's analysis of Plaintiff's subjective complaints**

Plaintiff argues that the ALJ's findings regarding the intensity, persistence, and limiting effects of her symptoms are unsupported by substantial evidence and do not fully account for her migraine symptoms in her RFC. (Pl.'s Mem. 25.) A claimant's RFC represents the most she can do despite the combined effects of all of her limitations, severe and non-severe. 20 C.F.R. § 416.945(a), (e). The RFC assessment is "based on all the relevant medical and other evidence" in the record. *Melissa Kathleen B. v. Kijakazi*, No. 20-CV-2115 (ECT/HB), 2022 WL 447232, at *11 (D. Minn. Jan. 27, 2022), *report and recommendation adopted sub nom.*, 2022 WL 445822 (D. Minn. Feb. 14, 2022). "The claimant bears the burden of establishing her RFC." *Id.* (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)). As part of formulating the RFC, the ALJ must consider various factors in evaluating the claimant's subjective complaints.[3] *Polaski v. Hecker*, 739 F.2d 1320, 1322 (8th Cir. 1984). Those factors, along with the objective medical evidence, include "the claimant's prior work record, and observations made by third parties and treating and examining physicians relating to such matters as: 1. the

---

[3] These factors are codified at both 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). The factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; [and] 5. functional restrictions." *Id.* The ALJ is not required to discuss each factor individually or in depth. *See Dunahoo v. Apfel*, 214 F.3d 1033, 1038 (8th Cir. 2001).

As noted above, Plaintiff claims that the ALJ improperly assessed the limiting effects of her subjective symptoms in formulating her RFC. Plaintiff testified that she experienced migraines two to five times a week that could last anywhere from an hour up to a day or more. (Tr. 126–27, 131, 160, 217.) Plaintiff also testified that these migraines caused nausea, photosensitivity, and sonophobia and required her to retreat to a dark, quiet room for relief. (Tr. 122, 127, 161, 163, 209.) In his decision, the ALJ found that Plaintiff's alleged migraines could reasonably be expected to cause the alleged symptoms. (Tr. 22.) However, the ALJ concluded that Plaintiff's statements related to the intensity, persistence, and limiting effects of those alleged symptoms were not entirely consistent with the medical evidence of the record. (*Id.*)

In assessing Plaintiff's subjective symptoms, the ALJ discussed the significant evidence suggesting that Plaintiff's reporting was "colored by substance abuse" and that Plaintiff's past narcotic addiction was a factor in her presentations for headache treatment, symptom reports, and absenteeism from work. (*Id.* at 28–33.) For example, the ALJ discussed that, although Plaintiff visited the ER on August 23, 2013, with a "10/10 headache" reportedly "accompanied by nausea and vomiting," she was "not in distress, "declined additional Imitrex," and the "physician noted there [was] no medical literature

8

[that] supported narcotics for migraines."[4] (Tr. 30.) The ALJ also noted that Plaintiff showed "problematic actions" during a medical visit on February 13, 2013, for headache pain, specifically asking for the narcotic Demerol. (Tr. 29, 1107–09.) And the ALJ noted that Plaintiff visited the ER on February 1, 2015, and became "angry when refused a narcotic injection." (Tr. 31 (citing Tr. 2032 (notes from Andrea B. Jolley, M.D. indicating that Plaintiff refused Compazine and Benadryl to treat her migraine and that she became upset when she did not receive Dilaudid (a narcotic))).) Consequently, the ALJ concluded that the record failed to support the claimant's assertions as to the frequency, intensity, and severity of her migraine headaches.[5]

---

[4]   (*See* Tr. 1056–58 ("Patient given additional medication but complains of pain. I am not comfortable providing her with narcotics as she has been taken off narcotics by her PCP and has a history of narcotic abuse. There is also nothing in the literature to support use of narcotics for migraine headaches. Patient refused Imitrex second dose.").)

[5]   (*See also* Tr. 778–79 (January 26, 2013 notes from Michael W. Pettinelli, M.D. regarding Plaintiff's ER visit denying Plaintiff's request for additional pain medication because "her headaches are rebound headaches" that she needed to taper off from); Tr. 1125 (December 9, 2013 notes from nurse practitioner Sherry A. Simon stating that Plaintiff was not working as a nurse due to her narcotic addiction and "past problems"); Tr. 1749 (notes from pain clinic records indicating that Plaintiff had a suspended license due in part to "alcohol and opioid drug addiction issues"); Tr. 2029–30 ("MD offered two more medications. She states, 'I have had that before and it won't work, so I don't want to waste your time.' Patient requesting discharge."); Tr. 2031 ("She does not appear ill. No distress."); Tr. 2032 ("Findings consistent with Migraine headache and treated as above. She states he [sic] pain is down to 6/10 and more Compazine and Benadryl were ordered which she refused. She is angry bc the last time she was here she received Dilaudid. We discussed that I do not give narcotics for migraines as they are not indicated in the treatment of migraines and she is angry about this. The patient has a history of narcotic abuse as well and I would not recommend using narcotics in this patent unless an injury is present."); Tr. 2054 (noting a history of migraine not responding to regular medication and noting the following question: "Drug seeking behavior?"); Tr. 3237 (reflecting Plaintiff visited the ER February 2, 2016 with reports of a headache but did "not appear ill" or in distress); Tr. 3238 ("She states narcotics work for her but that is not

The ALJ also gave great weight to the opinions of two physicians—Andrew Steiner, M.D. and Steven Goldstein, M.D.—who separately found that the medical record did not support Plaintiff's alleged level of impairment. (Tr. 27–28.) In 2016, Dr. Steiner testified that Plaintiff's "addiction history" and reports of migraine pain seemed "to indicate symptom magnification." (Tr. 182.) When asked to provide an example, Dr. Steiner responded that on more than one visit to the emergency room, Plaintiff reported pain at an 8–10 level even though the examiner's notes indicated no real distress. (Tr. 183.) In 2018, Dr. Goldstein opined—via interrogatories—that the medical record did not objectively support Plaintiff's alleged severity of migraines. (Tr. 2984.) When asked by interrogatory as to the "degree the headaches would interfere with activity during a typical day" and any evidence that the headaches persisted since the alleged onset date, Dr. Goldstein wrote: "NOT EVAL. CAREFULLY IN RECORD EXAM WHEN PRESENTING [WITH HEADACHE]. SHOW HER ALERT & ABLE TO COOPERATE." (Tr. 2984.) The ALJ found Dr. Steiner's testimony and Dr. Goldstein's interrogatory answer consistent with the record. (Tr. 28.)

The ALJ noted that, when following treatment, Plaintiff experienced continual improvement of her migraines.[6] In addition, Plaintiff did not adhere to certain treatment,

---

appropriate treatment of migraines and especially not with her hx of narcotic addiction. She decided she would go home to sleep in hopes the HA would be improved in the AM.").)

[6] (*See, e.g.*, Tr. 1608 (June 30, 2014 medical notes from neurologist Dr. Holt stating that, after addiction treatment, Plaintiff's "headaches are not as long-lived"); Tr. 2292 (October 25, 2016 notes from neurologist Dr. Holt stating a "50% improvement" from Botox treatment); Tr. 2317 (January 18, 2017 notes from neurologist Dr. Holt stating a

10

(Tr. 30). She also failed to continue treatment with certain headache subspecialists – such as not continuing visits with Miles Belgrade, M.D., a pain management subspecialist.[7] (Tr. 28.) Plaintiff's last visit to the emergency room was in February 2016.[8] (Tr. 32.) The ALJ discussed the lack of any relationship between Plaintiff's past work absences and headaches.[9] (Tr. 33.) For example, Plaintiff left her part-time job at a movie production studio due to back problems and not headaches.[10] (Tr. 25.)

The ALJ discussed the record as a whole, recognizing that the case turned on Plaintiff's allegations of disabling headaches:

> The undersigned acknowledges the testimonial recitation of multiple reports of headaches throughout the record, as well as favorable opinion evidence from treating providers. Despite a treatment record that shows mixed components of medication rebound, migraine, sinus, and tension headaches with an overlay of mental health conditions, this record fails to support the full range of the claimant's assertions as to the frequency, intensity, and severity of hear headaches. It does not support the associated impact on her attendance and reliability for work activity prior to the expiration of her date last insured.

---

"60% improvement" from Botox treatment); Tr. 2696 (February 20, 2018 notes from Dr. Holt reporting that Plaintiff's headaches were now less frequent); Tr. 3031 (August 26, 2019 notes from Dr. Holt reporting the improvement of Plaintiff's headaches from Botox and Emgality, the latter of which "shortened the headaches from 6-8 hours to 90 minutes").)

[7]  (*See, e.g.*, Tr. 3675, 3678, 3812, 3937–46.)

[8]  (*See, e.g.*, Tr. 3233.)

[9]  (*See, e.g.*, Tr. 1419, 1125.)

[10]  (*See* Tr. 2736.)

(Tr. 27.) Throughout his forty-four-page decision, the ALJ detailed sufficient reasons for discrediting Plaintiff's complaints and set forth the inconsistencies found to reach the conclusion that Plaintiff's migraines did not support additional limitations in Plaintiff's RFC. *See Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003) ("When rejecting a claimant's complaints of pain, the ALJ's express credibility determination must detail the reasons for discrediting the testimony and set forth the inconsistencies found."). The assessment of a claimant's subjective complaints "are the province of the ALJ," and the Court will defer to the ALJ's decision "as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility."[11] *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). In other words, an ALJ's decision will be "affirm[ed] if a reasonable mind could accept the . . . decision." *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013) (quotation marks and citation omitted). Because substantial evidence and good reasons support the ALJ's conclusion that the record did not support additional limitations in the RFC regarding Plaintiff's attendance and reliability for work activity due to her migraines, the Court concludes the ALJ did not err in evaluating Plaintiff's subjective complaints.

---

[11] The SSA has eliminated the use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character." *See* Social Security Ruling 16-3p, 2017 WL 5180304, at *2, 8 (Oct. 25, 2017). Instead, ALJs examine the consistency between subjective assertions and the record as a whole by considering all the evidence in an individual's record. (*Id.*) Although the usage of terminology changed, the substantive analysis remains the same. *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) ("It largely changes terminology rather than the substantive analysis to be applied.").

## 2. The ALJ's analysis of Dr. Holt's opinions regarding absenteeism

Plaintiff also argues the ALJ erred in rejecting neurologist Wolcott S. Holt, M.D.'s opinions regarding her absenteeism.[12] (Pl.'s Mem. 25–33.) As background, Plaintiff saw Dr. Holt for a consultation in February 2014 for severe daily headaches and continued treatment for several years. (Tr. 1623; *see also* Tr. 1608, 1860, 1957, 2139, 3052.) The ALJ reviewed each of Dr. Holt's opinions but gave them "negligible" or "limited weight." (Tr. 39–40 (discussing Dr. Holt's opinions from February 2014, October 2015, and January 2018).)[13]

The ALJ discussed Dr. Holt's opinions and provided good reasons for giving them less than controlling weight. *See Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) ("Where an ALJ assigns less than controlling weight to the opinion of a treating source, the ALJ must 'give good reasons' for doing so.") (citation omitted); *see also Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (same); 20 C.F.R. § 404.1527(c)(2). First, the ALJ gave Dr. Holt's February 2014 opinion that Plaintiff was disabled because of her migraines "negligible weight" because Dr. Holt's opinion was conclusory and

---

[12] Plaintiff argues that "the ALJ found Dr. Holt's opinion about Plaintiff's absenteeism was 'speculative and based on reporting colored by substance abuse and other inconsistencies.'" (Pl.'s Mem. 30 (citing Tr. 33).) The quote, however, represents the ALJ's conclusion that Plaintiff's reports of absenteeism due to headaches is speculative and based on the claimant's reporting colored by substance abuse and other inconsistencies as noted above. (Tr. 33.) The ALJ's discussion of Dr. Holt's medical opinions is more specifically addressed at pages 39 and 40. (*See* Tr. 39–40.)

[13] Dr. Holt's opinions are at the following administrative record page numbers: Tr. 1625, 1820–27, 2970.

13

reliant on Plaintiff's subjective reporting.[14] (Tr. 39.) And the ALJ also gave Dr. Holt's October 2015 and January 2018 opinions regarding Plaintiff's need for breaks and work absences "limited weight" in part because these opinions relied on Plaintiff's subjective reporting. (Tr. 40.) The ALJ's assignment of less weight to opinions based on subjective complaints was proper. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (concluding that the ALJ properly discounted a medical opinion that was based on subjective complaints); *see also Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (concluding that the ALJ properly discounted a doctor's report, in part, because it was "based on [the claimant's] subjective complaints"). Thus, because Dr. Holt's opinions relied on Plaintiff's subjective complaints, which the ALJ found unsupported under the *Polaski* analysis, the ALJ did not err in assigning less weight to Dr. Holt's opinions regarding Plaintiff's absenteeism.[15]

In conclusion, the Court "do[es] not reweigh the evidence presented to the ALJ" and "defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Renstrom*, 680 F.3d at 1064. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or

---

[14] The ALJ, however, considered Dr. Holt's "perspective" in constructing headache related limitations that were incorporated into the RFC. (Tr. 39.)

[15] The parties did not address in their briefing which standard of evaluation for medical opinions applies here. However, because Plaintiff's claim was filed before March 27, 2017, the Court applies the standard in the old regulation. *See* 20 C.F.R. § 404.1527.

because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quotations omitted). After careful review, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record as a whole and the decision of the Commissioner is affirmed.

## ORDER

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 24) is **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. No. 27) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: July 14, 2022               *s/ Becky R. Thorson*
                                  BECKY R. THORSON
                                  United States Magistrate Judge